**U**NITED **S**TATES **D**ISTRICT **C**OURT
**M**IDDLE **D**ISTRICT OF **F**LORIDA
**O**RLANDO **D**IVISION

**UNITED STATES OF AMERICA,**
**ETHYLENE CRENSHAW, ex rel.,**

          **Plaintiffs,**

-vs-                                                 **Case No.  6:06-cv-1462-Orl-19KRS**

**NANCY DEGAYNER, DEGAYNER**
**ASSOCIATION MANAGEMENT, INC.,**
**ELDIST MARIE LEWIS, CAROL BLACKMAN,**
**KASS GENNEKEN, ROYAL PALM**
**COURT HOMEOWNERS ASSOCIATION,**

          **Defendants.**

_____

# ORDER

This case comes before the Court on the following:

1. Motion of Plaintiffs, United States of America and Ethylene Crenshaw, ex rel., for Reconsideration and Memorandum of Law in Support Thereof (Doc. No. 118, filed June 20, 2008);

2. Memorandum of Law of Defendants in Opposition to Plaintiffs' Motion for Reconsideration (Doc. No. 120, filed June 26, 2008);

3. Motion of Plaintiffs, United States of America and Ethylene Crenshaw, ex rel., to Strike Defendants' Memorandum of Law in Opposition as a Scandalous and Sham Pleading and Memorandum of Law (Doc. No. 123, filed July 5, 2008); and

4. Memorandum of Law of Defendants in Opposition to Plaintiffs' Motion to Strike Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Reconsideration (Doc. No. 124, filed July 14, 2008).

**Background**

On June 13, 2008, the Court granted summary judgment in favor of Defendants[1] in this False Claims Act case against a homeowners' association, its board of directors, and a condominium management company. (Doc. No. 116.) Plaintiff and Relator Ethylene Crenshaw has filed a Motion for Reconsideration, arguing that the Court erred in every aspect of its ruling. (Doc. No. 118.) Defendants filed a Memorandum of Law in opposition to her Motion. (Doc. No. 120.) Crenshaw then moved to strike Defendants' Memorandum on the basis that it was a "sham pleading" and raised scandalous matters. (Doc. No. 123.) Defendants oppose the Motion to Strike. (Doc. No. 124.) The facts and arguments relevant to each motion are discussed in greater detail below.

**Standard of Review**

The decision to grant a motion for reconsideration under Federal Rule of Civil Procedure 59(e) is committed to the sound discretion of the Court and will not be overturned on appeal absent an abuse of discretion. *Region 8 Forest Serv. Timber Purchases Council v. Alcock*, 993 F.2d 800, 806 (11th Cir. 1993). The purpose of a motion for reconsideration is to correct manifest errors of law, to present newly discovered evidence, or to prevent manifest injustice. *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002). In order to reconsider a judgment, there must be a reason why the Court should reconsider its prior decision, and the moving party must set forth facts or law of a strongly convincing nature to induce the Court to reverse its prior decision. *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D. Fla. 1994). Thus, a motion for reconsideration should not be used "to relitigate old matters, [and] raise argument

---

[1] "Defendants" collectively refers to Nancy Degayner, Degayner Association Management, Inc., Eldist Marie Lews, Carol Blackman, Kass Genneken, and the Royal Palm Court Homeowners' Association.

or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005). Furthermore, a motion for reconsideration should not be used to simply argue with the district court's application of law. *Milner v. California*, 846 F.2d 1383, 1988 WL 46683, at *3 (9th Cir. May 6, 1988) (unpublished table decision). In sum, reconsideration of a previous order is an extraordinary remedy to be employed sparingly. *Sussman,*, 153 F.R.D. at 694.

**Analysis**

**I.      Motion for Reconsideration**

Crenshaw's twenty-five page Motion for Reconsideration raises sixteen arguments for reversal of the Court's previous ruling. (Doc. No. 118.) Each of her arguments fall within one of four categories: (1) arguments that were already made and rejected by the Court; (2) arguments that are newly raised and should have been raised before; (3) arguments relating to an issue on which the Court found in Crenshaw's favor; or (4) arguments that assign error to some other aspect of the Court's reasoning.

Motions for reconsideration should not be used "to relitigate old matters . . . ." *Michael Linet, Inc*, 408 F.3d at 763. Crenshaw argues on pages six through seven of her Motion that Defendants' failure to follow proper procedures as specified by the community bylaws equates to evidence that they intended to defraud the federal government. (Doc. No. 118 at 6-7.) The Court rejected this argument in its previous Order and will not revisit it here. (Doc. No. 116 at 25-28.)

Next, Crenshaw raises six arguments that did not appear in her Motion for Summary Judgment or in her Response to Defendants' Motion for Summary Judgment. (Doc. No. 118 at 9-10 (citing to *United States ex. rel. Cantekin v. University of Pittsburgh*, 192 F.3d 402 (3d Cir. 1999)

as authority that Crenshaw presented evidence of scienter); *id.* at 14-15 (arguing that Defendants were required to plead an "affirmative defense" of negligence); *id.* at 15-16 (arguing that Defendants engaged in a conspiracy to violate the False Claims Act even though the Second Amended Complaint pleads the Florida *tort* of civil conspiracy); *id.* at 19-20 (arguing that Crenshaw and Defendants had a "special relationship" for purposes of her intentional infliction of emotional distress claim); *id.* at 20 (arguing that Crenshaw suffered "parasitic damages"); *id.* at 21 (arguing that unsworn assertions in Crenshaw's Motion for Punitive Damages should have been considered as evidence that Defendants were liable for intentional infliction of emotional distress).) Motions for reconsideration should not be used to "raise argument or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc*, 408 F.3d at 763. Accordingly, the Court rejects these arguments.

Crenshaw also contends that the Court erred by finding that Defendants had received a sufficient majority vote in favor of taking out a loan from the Small Business Administration ("SBA") and therefore did not violate the SBA loan agreement. (Doc. No. 118 at 3-5, 9.) She raises four specific arguments in support of this claim. (*Id.* at 3 (arguing that the Board could not have passed a valid resolution without a proper general membership meeting); *id.* at 3-4 (arguing that the Board's false resolution was material in inducing the SBA to disburse the loan); *id.* at 5 (generally arguing that the Court "erred when it accepted Defendants' claim that the Board obtained a sufficient majority . . . ."); *id.* at 9 (making an unclear argument about the quorum required to receive a proper vote).) However, the Court's previous Order stated: "[b]ecause Defendants are the moving party, the Court draws all inferences in favor of Crenshaw and finds that there is a genuine issue of material fact concerning whether the Board complied with the Loan Agreement by receiving

approval of the loan by a sufficient majority." (Doc. No. 116 at 24.) Thus, Crenshaw is actually assigning error to the portion of the Court's opinion that found in her favor. Accordingly, the Court declines to address these arguments because they do not have the potential to alter the Court's ruling.

Finally, Crenshaw raises additional arguments which assign error to the Court's reasoning in three other aspects of its ruling: (1) that Crenshaw failed to present evidence of scienter; (2) that Crenshaw presented a legally insufficient claim for conversion; and (3) that the alleged incidents of harassment were not sufficiently extreme and outrageous to constitute intentional infliction of emotional distress. Because these are proper arguments to raise in a motion for reconsideration, the Court will address the merits of each argument.

First, Crenshaw argues that the Court erred by considering Defendants' reliance on the opinion of an attorney. (Doc. No. 118 at 8-9.) The Court concluded in its previous Order that Defendants' reliance on the attorney militated against inferring that Defendants knowingly made a false claim simply by virtue of their non-compliance with the loan agreement. (Doc. No. 116 at 29-31.) The Court noted that if Crenshaw wished to argue that Defendants' reliance on a professional opinion was unreasonable, she should have procured some sort of evidence suggesting that the attorney had not been provided with sufficient information to render an opinion. (*See id.*) Crenshaw claims that the burden of production actually rested on Defendants to prove that the attorney was provided with all of the necessary information to render an opinion. (Doc. No. 118 at 8-9.)

This argument incorrectly summarizes the summary judgment standard. Defendants were required to show the absence of a genuine issue of material fact regarding scienter, which they did in part by showing that they had relied on an attorney's opinion letter. *See, e.g.*, *Edmonson v. Bd.*

*of Trustees of the Univ. of Ala.*, 258 F. App'x 250, 252 (11th Cir. 2007) (the moving party has the burden to demonstrate the absence of a genuine issue of material fact). The opinion letter demonstrated that Defendants' mere non-compliance with the loan agreement, with no further evidence of intent, could not reasonably lend itself to an inference of scienter. Crenshaw was then required to come forward with some sort of evidence creating an issue of fact on the issue of scienter. *See id.* ("Once the party seeking summary judgment meets its burden of showing the absence of a genuine issue of material fact, the burden shifts to the non-moving party to submit sufficient evidence to rebut the showing with affidavits or other relevant and admissible evidence."). In other words, Defendants had a burden to show that Crenshaw failed to produce evidence of scienter; they did not have a burden to *disprove* her allegations. The burden of production at the summary judgment stage always rests on the party who will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Instead of producing actual evidence, Crenshaw asserted speculation and conjecture.

Next, Crenshaw argues that the Court erred by requiring her to prove that Defendants defrauded the government with a motive for personal gain. (Doc. No. 118 at 12-14.) This is a wholly incorrect interpretation of the Court's reasoning. In the previous Order, the Court concluded that Crenshaw had produced no direct evidence of scienter. (Doc. No. 116 at 31.) The only "evidence" she presented was a series of inferences drawn from circumstantial evidence. (*Id.* at 25-31.) The Court ruled that these inferences could not be reasonably drawn from the evidence presented, and therefore the Court was compelled to grant summary judgment on the issue. (*Id.*) In addition, the Court noted the following:

> Moveover, any inference that could be drawn from Crenshaw's presented evidence would not be sufficiently "persuasive" to create a genuine issue of material

> fact in this case. The Supreme Court has explained that "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 597 (1986). In the context of an antitrust case where the defendants were alleged to have conspired to charge below the market price, in other words a conspiracy with no obvious economic motive, the Court explained that factual implausibility requires non-moving parties to "come forward with more persuasive evidence to support their claim than would otherwise be necessary." *Id.*; *accord Cuesta v. Sch. Bd. of Miami-Dade County*, 285 F.3d 962, 970 (11th Cir. 2002) ("A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'").
> 
> Similar to *Matsushita*, Crenshaw has failed to demonstrate any plausible motive for the Board to fraudulently procure a government loan. She does not allege, and there is no evidence to suggest, that the Board embezzled money or put the loan to a personal use. Addressing this issue, Crenshaw merely argues that demonstrating a direct personal benefit is not necessary to prove a violation of the False Claims Act. (Doc. No. 69 at 14 (citing *Scolnick v. United States*, 331 F.2d 598, 599 (1st Cir. 1964)).) Although correct, this principle of law does not bear on the issue of plausibility. In this case, Crenshaw theorizes that the loan was either spent to repair roofs that were already repaired or used to replenish reserve funds. Why the Board would risk both criminal and civil liability for such a purpose is a looming question that Crenshaw fails to answer. Thus, the factual implausibility of Crenshaw's claim, as to which she carried the burden of proof, requires her to come forward with some sort of "persuasive evidence" to support her claim rather than creating "metaphysical doubt" concerning the Board's intentions. *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at [5]97. Crenshaw cannot meet this standard by merely relying on a weak inference. As a result, the evidence in this case is "so one-sided" that Defendants "must prevail as a matter of law." *Hickson Corp.*, 357 F.3d at 1260.

(Doc. No. 116 at 31-32 (footnotes omitted).)

The quoted passage explains that Crenshaw was not required to prove (as an element of her False Claims Act claim) that Defendants were driven by a motive for personal gain. However, the Court noted that Crenshaw needed to present a factually plausible case. Under the particular set of facts in this case, the lack of an economic motive made Defendants' alleged actions particularly implausible. Thus, in light of Crenshaw's failure to demonstrate plausibility, she was required to come forward with more than weak inferences tenuously drawn from circumstantial evidence.

Accordingly, Crenshaw's argument that the Court required her to prove a motive of personal gain is inaccurate and without merit.

Crenshaw next contends that the Court erred by refusing to consider certain derogatory signs and letters as evidence of intentional infliction of emotional distress. (Doc. No. 118 at 17-18.) The Court's Order specified that Crenshaw presented no evidence linking the majority of the alleged incidents of harassment to Defendants. (Doc. No. 116 at 33-36.) Thus, the Court focused its consideration on the various signs and letters which were identified by Crenshaw's handwriting expert as being created by Defendants Nancy Degayner and Kass Genneken. (*Id.*) Crenshaw contends that a second set of signs and letters are "similar" to the ones identified by her handwriting expert and therefore should have also been considered. (Doc. No. 118 at 17.) However, even if the Court were to consider these signs and letters, the result would not change. The problem with Crenshaw's evidence did not rest in quantity. The problem was that the alleged incidents of harassment were not sufficiently severe to meet the very high threshold of "outrageousness" required by Florida's case law. (Doc. No. 116 at 37-41.) In fact, the Court surmised that even if it were to consider every piece of evidence that Crenshaw presented, regardless of whether she actually attributed the alleged harassment to a particular Defendant, the standard would still not be met. (*Id.* at 41 n.38.) Thus, the "similar" additional signs and letters do not change the result.

Next, Crenshaw argues that the Court erred by disagreeing with her summary dismissal of the precedential value of cases analyzing the tort of intentional infliction of emotional distress in the employment context. (Doc. No. 118 at 21-22.) She states:

> With respect to the Defendants' argument against Crenshaw's intentional infliction of emotional distress claim, the court stated, "Crenshaw responds by summarily dismissing these cases as "employment-related" without explaining why the distinction matters." Crenshaw assumed that the court understood her argument.

> Claims for emotional distress in employment-related cases are generally considered Negligent Infliction of Emotional Distress and not Intentional Infliction of Emotional Distress.

(*Id.* at 118 at 21 (punctuation as in original).) As with many of her arguments, Crenshaw cites no authority for this proposition. The Court's review of the two cases to which she apparently refers revealed that both courts explicitly stated that they were analyzing the tort of intentional infliction of emotional distress. *Vance v. S. Bell Tel. & Tel. Co.*, 983 F.2d 1573, 1575 n.7 (11th Cir. 1993) ("We must also decide Vance's appeal of the dismissal of a state law claim for intentional infliction of emotional distress."); *Lay v. Roux Labs., Inc.*, 379 So.2d 451, 452 (Fla. 1st DCA 1980) ("We hold Count I was properly dismissed with prejudice because it failed to state a cause of action for the independent tort of intentional infliction of emotional distress . . . ."). Thus, her argument is without merit.

Finally, Crenshaw contends that the Court misunderstood her arguments regarding conversion. (Doc. No. 118 at 23-25.) Crenshaw previously argued that:

> Defendants knew Crenshaw had an equitable interest in the property rights of her unit and was an equitable owner in the Association and that Crenshaw was vitally concerned with all matters pertaining to membership and particularly with the unlawful actions taken by the Defendants when they used her property interest in the Association and in her unit to secure a fraudulent loan from the U.S. Government.

(Doc. No. 82 at 13-14.) The Court concluded that Crenshaw was claiming to have an equitable interest in the common property of the condominium community. (Doc. No. 116 at 32-33.) Since real property cannot be the subject of a conversion action, the Court rejected her claim as legally insufficient. (*Id.*) Crenshaw contends that the Court misunderstood the argument because she was really claiming that she had an equitable interest in the "corporate entity" of the Association, not the community's common property. (Doc. No. 118 at 23-25.)

There are several problems with this argument. First, the provision of the bylaws that Crenshaw cites in support of her argument states that each condominium unit owner has "an undivided proportionate interest in the Common Elements," not an interest in the corporate entity. (*See id.* at 24.) She has not cited to any provision that gives her an ownership interest in the corporate entity. More fundamentally, the Court observed in its earlier Order that:

> [t]he Loan Agreement does not "mortgage" the owners' property interests. As described above, the pledged security interest is a right "to receive and collect proceeds arising pursuant to any and all special assessment and any other assessments, levied by Debtor to amortize and repay Debtor's loan from Secured Party and all accounts and/or general intangible arising from such assessment(s)."

(Doc. No. 116 at 27 n.27.) Thus, the agreement does not pledge an interest in the corporate identity of the Association. Rather, the agreement pledges an interest in the special assessment that the Board levied on the Association's members. Crenshaw has not presented any evidence establishing that she has a property right in the special assessment.

Accordingly, Crenshaw's arguments for reconsideration are without merit, and the Motion will be denied.

**II.    Motion to Strike**

Crenshaw also moves to strike Defendants' Memorandum of Law in opposition to her Motion for Reconsideration. (Doc. No. 123.) Crenshaw contends that Defendants have filed the Memorandum of Law as a "sham pleading" and that it contains scandalous, impertinent, and derogatory material. (*Id.* at 1-6.)

The Motion is not well taken. Crenshaw essentially claims that Defendants' Memorandum of Law is a "sham pleading" because she disagrees with the various arguments Defendants make. (*See, e.g.*, *id.* at 5 (citing *United States ex. rel. Walker v. R&F Props. of Lake County Inc.*, 433 F.3d

1349 (11th Cir. 2006), and making arguments concerning scienter).) In sum, the Motion to Strike is nothing more than a transparent attempt to file a reply brief without seeking leave of the Court. It raises no valid arguments about the propriety of Defendants' Memorandum of Law. In addition, Defendants' Memorandum of Law is not a "pleading" and therefore cannot be stricken under Federal Rule of Civil Procedure 12(f). *Polite v. Dougherty County Sch. Sys.*, No. 07-14108, 2008 WL 3272131, at *3 n.7 (11th Cir. Aug. 11, 2008) ("Motions to strike are only appropriately addressed towards matters contained in the pleadings."). Accordingly, the Motion will be denied.

### Conclusion

Based on the foregoing:

1. The Motion of Plaintiffs, United States of America and Ethylene Crenshaw, ex rel., for Reconsideration and Memorandum of Law in Support Thereof (Doc. No. 118, filed June 20, 2008) is **DENIED**.

2. The Motion of Plaintiffs, United States of America and Ethylene Crenshaw, ex rel., to Strike Defendants' Memorandum of Law in Opposition as a Scandalous and Sham Pleading and Memorandum of Law (Doc. No. 123, filed July 5, 2008) is **DENIED**.

3. The case shall remain closed.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on October 16, 2008.

_____
PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record